**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**


**22-19**


**JESSICA BREAUX**

**VERSUS**

**MATTHEW THOMAS PICKETT**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-3870
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**CHARLES G. FITZGERALD**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Billy H. Ezell, Candyce G. Perret, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

**Mark D. Plaisance**
**Marcus J. Plaisance**
**Plaisance Law, LLC**
**Post Office Box 1123**
**Prairieville, Louisiana  70769**
**(225) 775-5297**
**Counsel for Plaintiff/Appellant:**
**Jessica Breaux**

**Harley M. Brown**
**854 Main Street**
**Baton Rouge, Louisiana  70802**
**(225) 336-0353**
**Counsel for Plaintiff/Appellant:**
**Jessica Breaux**

**Bradford H. Felder**
**Veazey, Felder & Renegar, LLC**
**2 Flagg Place**
**Lafayette, Louisiana  70508**
**(337) 234-5350**
**Counsel for Plaintiff/Appellant:**
**Jessica Breaux**

**Abbey L. Williams**
**111 North Court Street**
**Opelousas, Louisiana  70570**
**(337) 942-7193**
**Counsel for Defendant/Appellee:**
**Matthew Thomas Pickett**

**FITZGERALD, Judge.**

The issue here is whether the trial court erred by including the mother's per diem allowances in calculating her gross income for child support.

## FACTS AND PROCEDURAL HISTORY

Matthew Thomas Pickett and Jessica Breaux are the parents of one minor child. In April 2019, the parties stipulated to joint legal custody with Matthew designated as the domiciliary parent. Six months later, Matthew filed a rule to establish child support. The hearing on child support was held in May 2021. The trial court ruled from the bench at the close of evidence.

In sum, Jessica was ordered to pay Matthew child support in the amount of $1,217 per month for the period of October 18, 2019 (which is the date of judicial demand) through December 31, 2019. This amount is based in part on the trial court's finding that Jessica's monthly gross income at that time was $14,197. She was also ordered to pay child support in the amount of $1,115 per month beginning on January 1, 2020. The trial court found that Jessica's monthly gross income in 2020 was $13,066.

The trial court's ruling was reduced to a written final judgment signed on July 9, 2021. Jessica now appeals this judgment.

On appeal, Jessica asserts a single assignment of error. In her words, "The sole issue in this appeal is whether the trial court legally erred by including [her] *per diem* in the calculation of her gross income for purposes of setting child support under La.[R.S.] 9:315."

## LAW AND ANALYSIS

Jessica's assignment of error presents two issues. First, whether the trial court erred in placing the burden on Jessica to prove that her per diem allowances were

not subject to federal income taxation. And second, whether the trial court erred in its calculation of Jessica's gross income.

### *Did the Trial Court Place the Burden of Proof on the Wrong Party?*

Placing the burden of proof on the wrong party is a legal error that interdicts the fact-finding process because it casts a more onerous standard than the law requires on one of the parties. *Div. of Admin., Office of Cmty. Dev.—Disaster Recovery Unit v. Leger*, 21-455 (La.App. 3 Cir. 12/22/21), 333 So.3d 486. Thus, we review de novo whether the trial court legally erred in requiring Jessica to prove by a preponderance of the evidence that her per diem allowances were not subject to federal income taxation.

To this end, under the Louisiana child support guidelines, the term "gross income" is defined broadly as the "income from any source[.]" La.R.S. 9:315(C)(3)(a). However, five sources of income are then specifically excluded from this definition, including "[p]er diem allowances *which are not subject to federal income taxation under the provisions of the Internal Revenue Code*." La.R.S. 9:315(C)(3)(d)(ii) (emphasis added).

The record here reflects that Matthew initially established Jessica's gross income from all sources. It was, after all, Matthew's rule for child support. And he satisfied his burden of production by introducing into evidence Jessica's pay stubs for the relevant time periods. At this point, the burden of proof shifted to Jessica to prove that the per diem allowances should be excluded from the calculation of "gross income." In other words, Jessica—as opposed to Matthew—had the burden of proving that the per diem allowances were not subject to federal income taxation under the provisions of the Internal Revenue Code. La.R.S. 9:315(C)(3)(d)(ii).

2

Thus, the trial did not commit legal error in placing this burden of proof on Jessica.

### Did the Trial Court Err in its Calculation of Jessica's Gross Income?

The calculation of child support consists of many findings of fact, including the gross income of each party. Findings of fact are reviewed on appeal using the manifest error-clearly erroneous standard of review. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

To reverse a trial court's determination of fact under this standard, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the trial court is clearly wrong or manifestly erroneous. *Id.* The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.*

The trial court here calculated Jessica's gross income by combining her wages and per diem allowances.[1] According to the trial court, the per diem allowances were included because Jessica failed to prove that these payments were not subject to federal income taxation under the provisions of the Internal Revenue Code. Jessica disagrees, specifically pointing to her witness testimony, her verified income statement, and her payroll records. This evidence is addressed below.

Jessica testified at trial that she is employed by On & Offshore Quality Control; that she works exclusively from home; that she is paid every two weeks; and that for each pay period, she receives approximately $3,289 in wages and $4,132 in non-

---

[1] For 2019, the trial court determined that Jessica's monthly gross income was $14,197 ($6,863 in wages and $7,334 in "per diem" payments). And for 2020, the trial court found that her monthly gross income was $13,066 ($6,079 in wages and $6,987 in "per diem" payments).

taxable per diem payments. The trial court then inquired as follows: "Can I ask a question, because it's very relevant to me on a per diem. . . . [D]o you submit any documentation to your employer that they utilize to pay you the . . . [per diem allowances]?" Jessica responded, "Just a time sheet." The court followed-up, "Just a time sheet?" And Jessica again responded, "Yes."

In conjunction with her testimony, Jessica's affidavit of income and expenses was admitted into evidence. The affidavit states that her gross income is $5,533 per month. The trial court's oral reasons reflect that little weight was given to this affidavit. After all, Jessica had already testified about her income. And, but for La.R.S. 9:315.2, the affidavit would have been excluded as inadmissible hearsay. In relevant part, La.R.S. 9:315.2 states:

> A. Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. . . . Suitable documentation of current earnings shall include but not be limited to pay stubs or employer statements. The documentation shall include a copy of the party's most recent federal tax return.

Turning now to Jessica's payroll records. In essence, Jessica is relying on the pay stubs and paychecks that were admitted in evidence. For the years 2016 through 2019, Jessica received two checks for each pay period: one for wages and the other for per diems and expense reimbursements. Hence, she received two pay stubs: one corresponding to wages and the other corresponding to per diems and expense reimbursements. The pay stubs corresponding to the per diems and expense reimbursements are vague. For example, the itemized amounts are coded as "MI," "PD," "BM," "Equip/Training," and "Insp Pkg." The per diem payments, according to Jessica, are coded as "PD." But other than the pay period and the amounts paid for each coded item, no other information is reflected on these pay stubs.

Now to the 2020 payroll records. Beginning in January 2020, Jessica received a single paycheck with a single corresponding pay stub. Each paycheck included both her wages and per diem amounts. And the corresponding pay stub reflects this information. However, the 2020 pay stubs categorize the per diems as "deductions," and the "total hours worked" for each pay stub is 0.00.

Notably absent from the record is Jessica's most recent federal income tax return which is required by La.R.S. 9:315.2.

The trial court addressed all of this in its oral reasons, explaining as follows:

I guess the first thing I need to do is deal with the issue of per diem, and I want to deal with that first, because that affects what I decide Jessica Breaux's income is. I know what the statute says. I know it says that if it's not taxable by the Internal Revenue Service, that it's not included in gross income. It says that. Now, all I have that it's not being taxed, is Ms. Breaux's statement that she's not paying any tax on it. I also have that her employer is not withholding any tax from it, but again employers don't necessarily always withhold tax from per diem. It is quite unusual, in my view, for someone to receive per diem when they're not required to travel. In this case, not even required to leave their home, much less go to an office down the road, not required to do so. No explanation, other than her employer classifies it as per diem. Well, for that to be the case here, I don't have a tax return showing that she didn't pay tax on it. She may not have reported it. It may not be on her tax return. I don't know. I don't have her tax return. That's not my fault, but I do know that per diem, when I understand it, the way I understand it, and my dealings with looking at what the Internal Revenue says about it, there's a couple of different ways per diem happens. Employees can turn in actual receipts, and be reimbursed actual receipts. They can be given a per diem that is a flat rate. There is a set amount of per diem that the Internal Revenue Service fixes each year, that if it doesn't exceed this amount in a flat rate, it's not taxable. If more than that's paid, typically it is, if it's reported, and whether her employer chooses to call it per diem or not, when she's not traveling and her annual per diem, at least for the years I'm looking at, exceeds her salary, in all the years that I've look[ed] at, I cannot believe that the legislature intended it to be this way.[2]

---

[2] The Internal Revenue Code was enacted by Congress in Title 26 of the United States Code. Treasury regulations, commonly referred to as federal tax regulations, provide the official interpretation of the Internal Revenue Code by the U.S. Department of the Treasury. The federal taxation of per diem allowances is addressed in 26 U.S.C.A. § 119. The corresponding federal tax regulation is 26 C.F.R. § 1.62-2. Neither 26 U.S.C.A. § 119 nor 26 C.F.R. § 1.62-2 is cited or

The trial court also expressed surprise that Jessica's expert, a certified public accountant, did not provide any testimony about the per diem allowances. As the trial court put it:

> Now, nobody, including the expert that your client hired, took this stand and said that the per diem that she was getting for sitting at her home in Port Barre and working, which exceeded her income, most of the time, the per diem, would not be taxed if the Internal Revenue Service would have come in and look at it.

In the end, the trial court found that Jessica did not prove that the per diem payments were exempt from federal income taxation under the provisions of the Internal Revenue Code. In doing so, the trial court questioned the reliability of Jessica's testimony and the accuracy of her pay stubs. And these credibility concerns were based on other objective evidence in this case, including Jessica's testimony that she works exclusively from home (and thus does not incur any expenses related to work travel), and that she only submits time sheets for the per diems (and thus does not submit expense reports reflecting the date, time, place, amount, and business purpose of the expense). Of particular concern to the trial court was that none of Jessica's federal tax returns were offered into evidence.

Put simply, the trial court's decision to include the per diem payments as gross income is reasonably supported by the record. The trial court did not manifestly err in calculating Jessica's gross income.

## DECREE

For the above reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Jessica Breaux.

**AFFIRMED.**

---

discussed in Jessica's brief to this court. We will therefore forego any discussion concerning the interpretation or application of these tax provisions.